## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARCELL LOUISE JOHNSTON,

             Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

CIVIL ACTION NO. 3:20-CV-00189

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Marcell L. Johnston brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 13-2, at 10). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14; Doc. 15).

For the following reasons, the Commissioner's decision is **VACATED**, and the case is **REMANDED** for further consideration.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Johnston is an adult individual born March 22, 1969, who was 44 years old at the time of her alleged onset date of disability – January 1, 2014. (Doc. 13-3, at 2). Johnston's age at the onset date makes her a "younger person" under the Social Security Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Johnston graduated from high school in 1987 and has no specialized

vocational training. (Doc. 13-6, at 4). Prior to her alleged onset date, Johnston served as a home health aide and a day care assistant. (Doc. 13-2, at 65).

In December 2016, Johnston protectively filed applications under Title II and Title XVI of the Social Security Act, claiming disability beginning January 1, 2014, due to stroke, heart attacks, heart problems, and depression. (Doc. 13-6, at 3). The Social Security Administration initially denied the applications in May 2017, prompting Johnston's request for a hearing, which Administrative Law Judge (ALJ), Frank Barletta, held on August 29, 2018. (Doc. 13-2, at 14; Doc. 13-2, at 59). In a January 8, 2019 written decision, the ALJ determined that Johnston is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 13-2, at 14-26). The Appeals Council subsequently denied Johnston's request for review. (Doc. 13-2, at 9).

On February 4, 2020, Johnston commenced the instant action. (Doc. 1). The Commissioner responded in July 2020, providing the requisite transcripts from Johnston's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Johnston raising one principal base for reversal or remand. (Doc. 16; Doc. 22; Doc. 23).

## II.   STANDARD OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that

exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[1] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

   A. ADMINISTRATIVE REVIEW

   In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

---

   [1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

B. Judicial Review

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Johnston was disabled, but whether the Commissioner's determination that Johnston was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of

the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In a decision dated January 8, 2019, the ALJ determined that Johnston "has not been under a disability, as defined in the Social Security Act, from January 1, 2014, the alleged onset date, through the date of this decision." (Doc. 13-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

### A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2). Here, the ALJ determined that "[Johnston] had not engaged in [SGA] since January 1, 2014, the alleged onset date." (Doc. 13-2, at 16). Thus, the ALJ proceeded to step two.

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Johnston had sixteen severe, medically determinable impairments: (1) coronary artery disease, (2) angina pectoris, (3) hypertension, (4) a history of myocardial infarctions, (5) a history of cerebrovascular accident, (6) peripheral vascular disease, (7) hyperlipidemia, (8) diabetes mellitus, (9) neuropathy, (10) obesity, (11) major depressive disorder, (12) disruptive mood dysregulation disorder, (13) anxiety, (14) panic disorder, (15) mild neurocognitive disorder, and (16) conversion disorder. (Doc. 13-2, at 16-17).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential

analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that Johnston did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Doc. 13-2, at 17-19).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

After weighing Johnston's written and oral statements against other evidence in the record, the ALJ found that Johnston's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 20). The ALJ then went on to detail Johnston's medical records and treatment history. (Doc. 13-2, at 20-24). Considering all evidence in the record,

the ALJ determined that Johnston has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with additional limitations to address her medical impairments:

> [Johnston] can frequently climb ramps and stairs. [Johnston] can never climb ladders, ropes, or scaffolds. [Johnston] can occasionally balance. [Johnston] can frequently stoop, kneel, and crouch. [Johnston] can occasionally crawl. [Johnston] should [avoid] concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other pulmonary irritants. [Johnston] should avoid concentrated exposure to hazards such as unprotected heights or dangerous moving machinery. [Johnston] is limited to unskilled work involving only simple, routine tasks and simple work-related decisions.

(Doc. 13-2, at 20).[2]

### E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required

---

[2] It appears that the ALJ's RFC contains a typographical error. *See* (Doc. 13-2, at 19-20). In this case, the ALJ confined Johnston to an RFC of light work with additional limitations where, among other things, the ALJ concluded that Johnston should avoid pulmonary irritants. *See* (Doc. 13-2, at 19-20). The ALJ, however, committed error in stating, "[Johnston] 'should must' concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other pulmonary irritants." Based on the hypothetical question(s) posited to the vocational expert, the Court has interpreted this to mean that Johnston should "avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and, so on with other pulmonary irritants . . ." *See* (Doc. 13-2, at 79). Finding that this typographical error does not change the outcome of this case, the Court concludes that the error is harmless.

by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Johnston's RFC to the demands of Johnston's past relevant work as a home health aide and a day care assistant the ALJ found, based on testimony adduced from a vocational expert at Johnston's administrative hearing, that Johnston was unable to perform any past relevant work. (Doc. 13-2, at 24).

F. Step Five

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Johnston's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Johnston could have performed. (Doc. 13-2, at 25). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Johnston could have performed the requirements of representative occupations, such as a router, a final assembler, and a document preparer. (Doc. 13-2, at 25).

Given the foregoing analysis, the ALJ determined that Johnston was not disabled and therefore denied her applications for benefits. (Doc. 13-2, at 26).

IV. **Discussion**

On appeal, Johnston challenges the ALJ's RFC assessment. (Doc. 16, at 3-15). Specifically, Johnston contends that the ALJ erred in weighing the opinion evidence of record

pursuant to the appropriate legal standards. (Doc. 16, at 3-17). In alleging this argument, Johnston contends that the ALJ failed to credit the social limitations opined by Dr. LaJeunesse. (Doc. 16, at 3). Johnston further contends that the ALJ unreasonably relied on the opinion of Dr. Calise over an examining source's opinion concerning manipulative limitations. (Doc. 16, at 3-15). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 12, at 2; Doc. 22).

A. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S WEIGHING OF THE OPINION EVIDENCE OF RECORD

Johnston's primary argument on appeal is that the ALJ erred in weighing the opinion evidence of record, thus the RFC is not supported by substantial evidence. (Doc. 16, at 3-15). The Court of Appeals has ruled that the ALJ – not treating or examining physicians or state agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184, at *2. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's]

review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661, at *3 (M.D. Pa. Apr. 13, 2018).

In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' . . . ."). Under the regulations, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting *Mason*, 994 F.2d at 1066)).

Applying the above standard to the present record, the Court finds that the RFC assessment is not supported by substantial evidence.

- 11 -

In relevant part, Johnston has suffered from three heart attacks and two strokes. (Doc. 13-12, at 65-69). Johnston's medications include Pantoprazole, Nitrostat, citalopram, ondansetron, atorvastatin, furosemide, trazodone, metoprolol succinate, isosorbide, and aspirin. (Doc. 13-12, at 65). Due to suffering from three heart attacks and two strokes, Johnston alleges that she struggles with right-sided facial drooping, right hemiparesis, dysarthria, dizziness, black-outs, chest pain, frequent and severe headaches, confusion, occasional diplopia, and difficulty ambulating on her own volition. (Doc. 13-12, at 53-55; Doc. 13-13, at 11-19, 95-96; Doc. 13-14, at 13-16).[3]

Due to her debilitating symptoms, Johnston contends that she has significant social and manipulative limitations. (Doc. 16, at 3-15). In light of this notion, Johnston argues that the ALJ improperly evaluated the opinion evidence in crafting the RFC assessment. (Doc.

---

[3] Hemiparesis is defined as "weakness or the inability to move on one side of the body, making it hard to perform everyday activities like eating or dressing. *See* American Stroke Association. Hemiparesis, (Apr. 8, 2019); https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis. One-sided weakness in an individual's arms, hands, face, chest, legs, or feet can cause the following: loss of balance, difficulty walking, impaired ability to grab objects, decrease in movement precision, muscle fatigue, and lack of coordination. American Stroke Association. Hemiparesis, (Apr. 8, 2019); https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis. Dysarthria is defined as "a speech disorder that is characterized by poor articulation, respiration, and/or phonation. National Aphasia Association. Dysarthria, (Jan. 22, 2021); https://www.aphasia.org/aphasia-resources/dysarthria/. This includes slurred, slow, effortful, and prosodically abnormal speech. *See* National Aphasia Association. Dysarthria, (Jan. 22, 2021); https://www.aphasia.org/aphasia-resources/dysarthria/. Dysarthrias are characterized by weakness and/or abnormal muscle tone of the speech musculature that moves the articulators such as the lips and tongue." Dysarthria, (Jan. 22, 2021); https://www.aphasia.org/aphasia-resources/dysarthria/. "Dysarthria is caused by damage to areas in the brain that are important for more motor aspects of speech." Dysarthria, (Jan. 22, 2021); https://www.aphasia.org/aphasia-resources/dysarthria/. Diplopia is defined as double vision, which causes a person to see two images of a single object. Harvard Health Publishing: Harvard Medical School. Double Vision (Diplopia), (Jan. 22, 2021); https://www.health.harvard.edu/a_to_z/double-vision-diplopia-a-to-z.

16, at 3-15). Particularly, Johnston contends that the ALJ erroneously assigned "great" weight to the opinion of a non-examining, state agency medical consultant, Dr. Calise, over the opinion of the examining source, Dr. Willner. (Doc. 16, at 3-15). Specifically, Johnston challenges the ALJ's reliance on Dr. Calise's opinion, which failed to include manipulative limitations, in his RFC. (Doc. 16, at 14-15). Johnston further avers that in crafting the RFC, the ALJ should have included the social limitations opined by Dr. LaJeunesse. (Doc. 16, 3-15).

On this score, in May 2017, Dr. Calise opined that Johnston could perform light work with postural and environmental limitations. (Doc. 13-3, at 6-8). As correctly asserted by Johnston, Dr. Calise did not opine manipulative limitations. (Doc. 13-3, at 6). Nevertheless, the ALJ assigned "great" weight to Dr. Calise's opinion, concluding that "his opinion is generally consistent with the overall evidence of record, including medical records documenting stable cardiac functioning, controlled diabetes mellitus, and minimal objective signs supporting residual limitations from stroke that impose significant functional limitation." (Doc. 13-2, at 24).

Additionally, in March 2016, Dr. LaJeunesse completed a medical source statement concerning Johnston's mental capabilities and her ability to perform work-related activities. (Doc. 13-12, at 70-72). In the form, Dr. LaJeunesse opined that Johnston had mild limitations in understanding and remembering simple instructions; mild limitations in carrying out simple instructions; and mild limitations in her ability to make judgments on simple work-related decisions. (Doc. 13-12, at 70). Dr. LaJeunesse further opined that Johnston had marked limitations in her ability to understand and remember complex instructions; marked limitations in her ability to carry out complex instructions; marked limitations in her ability

to make judgments on complex work-related decisions; marked limitations in her ability to interact appropriately with the public; marked limitations in her ability to interact appropriately with supervisors; and marked limitations in her ability to interact appropriately with co-workers. (Doc. 13-12, at 70). Significantly, Dr. LaJeunesse noted that Johnston had experienced several strokes, which altered her cognitive functioning; that she slurred her words and could not keep up; that she could not cook, clean, or manage money; and that these symptoms were all well-documented in the record. (Doc. 13-12, at 70-71).

> The ALJ assigned "partial" weight to Dr. LaJeunesse's opinion, concluding:
>
> Greater weight is given to the opinion regarding simple instructions, as this is consistent with mental status examinations in the record documenting normal reasoning skills, problem solving, and executive functioning. Less weight is given to the opinion regarding social interactions, as this opinion is inconsistent with Dr. LaJeunesse's own findings on examination, as well as the record as a whole. Dr. LaJeunesse observed that the claimant had a euthymic mood, cooperative behavior, normal eye contact and speech, and a normal social presentation.

(Doc. 13-2, at 23).

With regard to Johnson's fine motor activity of her hands, Johnston was examined by Dr. Willner in January 2016. (Doc. 13-12, at 32). With respect to Johnston's right hand, Dr. Willner opined that Johnston could never reach overhead or in all directions, and could never handle, finger, feel or push and pull. (Doc. 13-12, at 39). Dr Willner also indicated that Johnston could occasionally feel in her right hand. (Doc. 13-12, at 39). Specifically, Dr. Willner noted that Johnston's right grip strength [was] 3/5, left strength 5/5; that she had difficulty zipping and unzipping with the right hand; and that she was able to button and unbutton with great deal of difficulty tying and untying. (Doc. 13-12, at 32). With regard to her left hand, Dr. Willner opined that Johnston could occasionally reach overhead and in all

- 14 -

directions, and occasionally handle, finger, feel, or push and pull. (Doc. 13-12, at 39). Upon another examination in May 2016, Dr. Willner opined that Johnston could never reach overhead or in all directions with her dominant right hand; could occasionally handle and finger with her dominant right hand; could frequently finger with her dominant right hand; and could continuously feel, push and pull with her dominant right hand. (Doc. 13-12, at 80).

The ALJ assigned Dr. Willner's opinion "little" weight, explaining that Dr. Willner's opinions were inconsistent with his own examinations and the record as a whole; that evidence demonstrating that Johnston had normal hand and finger dexterity did not support manipulative limitations; and that "hospital records documenting inconsistencies on strength testing and normal strength and range of motion at the upper and lower extremities bilaterally [did] not support the extent of the exertional and nonexertional limitations assessed by Dr. Willner." (Doc. 13-2, at 23-24).

Johnston argues that the ALJ erred in assigning "great" weight to the opinion of Dr. Calise, which included no manipulative limitations. (Doc. 16, at 3-15). Johnston further contends that the ALJ erred in failing to account for Dr. LaJeunesse's social limitations in crafting the RFC assessment. (Doc. 16, at 3, 11). Johnston avers that the medical record is replete with evidence, which demonstrates that she struggles with symptoms, which impact her finger dexterity, her mental health, and her cognitive functioning. (Doc. 16, at 3-15). For example, Johnston argues that the medical record contains a plethora evidence, which demonstrates that she suffers from right-sided facial drooping, right-sided weakness (loss of functioning or numbness, notably in her arms and legs), chest pain, black-outs, confusion, tingling in the bilateral fingers, swelling in her lower extremities and hands, and lack of grip strength), right tongue deviation, slurred speech, and below average cognitive functioning.

(Doc. 16, at 5-11). Johnston submits that these symptoms greatly impact her ability to work, thus the ALJ's step five evaluation is not supported by substantial evidence. (Doc. 16, at 11, 15).

In response, the Commissioner argues that the ALJ reasonably considered the opinions of doctors LaJeunesse and Willner and provided valid reasons in affording their opinions limited weight. (Doc. 22, at 12-26). Therefore, the ALJ complied with the governing law and regulations. (Doc. 22, at 12-26). The Commissioner further contends that the record evidence does not support manipulative limitations and that Johnston has failed to identify any severe impairment related to her hands. (Doc. 22, at 20-24). With regard to Johnston's argument concerning additional social limitations, the Commissioner asserts that to address Johnston's mental health and cognitive issues, the ALJ restricted her to unskilled work involving only simple, routine tasks and simple work-related decisions. (Doc. 22, at 17).

Reviewing the record as a whole, the Court finds that the ALJ's weighing of the opinion evidence is not supported by substantial evidence. The Court of Appeals has repeatedly held that the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Plummer*, 186 F.3d at 429. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *See Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066)); *see also Morales*, 225 F.3d at 317. The *Cotter* court explained:

> There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests. Chief among them is the need for the appellate court to perform its

statutory function of judicial review. A statement of reasons or findings also helps to avoid judicial usurpation of administration functions, assures more careful administrative consideration, and helps the parties plan their cases for judicial review.

*Cotter*, 642 F.2d at 704-05 (citations omitted).

In this case, the ALJ assigned "great" weight to the non-examining, state agency medical consultant, Dr. Calise. (Doc. 13-2, at 24). In doing so, the ALJ reasoned that Dr. Calise's opinion was generally consistent with the overall evidence of record, including medical records documenting stable cardiac functioning, controlled diabetes mellitus, and minimal objective signs supporting residual limitations from stroke that impose significant functional limitation. (Doc. 13-2, at 24). The Court finds that the ALJ's one sentence explanation, in light of a record replete with contradictory evidence amounts to error. As correctly asserted by Johnston, the medical record contains a plethora of evidence, which demonstrates that Johnston suffers from right-sided facial drooping, increased weakness in the right upper extremity, loss of functioning or numbness (notably in her arms and legs), tingling in the bilateral fingers, swelling in her lower extremities, swelling in her hands, lack of grip strength, right tongue deviation, slurred speech, and below average cognitive functioning. (Doc. 13-2, at 69-70; Doc. 13-7, at 22-23; Doc. 13-9, at 10, 89-91; 13-10, at 3-8; 13-12, at 18, 32-58; Doc. 13-13, at  5-13, 18-19, 57-59, 82, 95-97; Doc. 13-17, at 22). The evidence further demonstrates that in March 2016, Dr. LaJeunesse opined that Johnston's numerous strokes have altered her cognition, affecting her ability to cook, clean, and handle money. (Doc. 13-12, at 70-72). Moreover, Dr. LaJeunesse opined that these symptoms were well-documented by medical signs, laboratory findings, and other evidence in the record. (Doc. 13-12, at 71). Further, the medical record demonstrates that in January and May of

2016, Dr. Willner opined extensive manipulative limitations with regard to Johnston's right-hand dexterity. *See* Doc. 13-12, at 32-29, 80). However, in assigning "great" weight to Dr. Calise's opinion, the ALJ makes no mention of any of these significant contradictory findings, leaving the Court to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all. The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence amounts to error. *See Fargnoli,* 247 F.3d at 44; *see also Burnett,* 220 F.3d at 119; *Cotter,* 642 F.2d at 707. Therefore, the Court cannot conclude that the ALJ's consideration of Dr. Calise's opinion is supported by substantial evidence.

With regard to the opinions of Dr. LaJeunesse and Dr. Willner, the Court finds that the ALJ's consideration of these opinions also amounts to error. Similarly, in discounting the opinions of Dr. LaJeunesse and Dr. Willner, the ALJ failed to discuss the significant contradictory findings outlined above. For example, in assigning "partial" weight to Dr. LaJeunesse's opinion the ALJ concluded:

> The opinion of Dr. LaJeunesse is given partial weight. Greater weight is given to the opinion regarding simple instructions, as this is consistent with mental status examinations in the record documenting normal reasoning skills, problem solving, and executive functioning. Less weight is given to the opinion regarding social interactions, as this opinion is inconsistent with Dr. LaJeunesse's own findings on examination, as well as the record as a whole. Dr. LaJeunesse observed that [Johnston] had a euthymic mood, cooperative behavior, normal eye contact and speech, and a normal social presentation.

(Doc. 13-2, at 23).

In assigning "little" weight to Dr. Willner's opinion the ALJ concluded:

> The opinions of Dr. Willner are given little weight. His opinions are inconsistent with his own examination findings as well as the record as a whole. For example, evidence that [Johnston] ambulated with a normal gait, completed a full squat, and displayed a normal stance does not support a

conclusion that she can walk only one hours at a time and stand two hours at a time. Evidence that she had normal hand and finger dexterity does not support manipulative limitations. Additionally, hospital records documenting inconsistencies on strength testing and normal strength and range of motion at the upper and lower extremities bilaterally do not support the extent of the exertional and nonexertional limitations assessed by Dr. Willner.

(Doc. 13-2, at 24).

Again, it appears that the ALJ makes no mention of any of the significant countervailing findings enumerated above, while simultaneously overlooking many medical records which tend to support a contrary conclusion. "Although we do not expect the ALJ to make reference to every treatment note . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *See Fargnoli*, 247 F.3d at 42; *see also Cotter*, 642 F.2d at 705; *Gleason v. Colvin*, 152 F. Supp. 3d 364, 386 (M.D. Pa. 2015). The Court of Appeals has repeatedly held that "[a]n ALJ cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *See Gleason*, 152 F. Supp. 3d at 386; *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter*, 642 F.2d at 705.

As mentioned *supra*, the RFC assessment must be based on the consideration of all of the evidence in the record, including the testimony of the claimant regarding his or her activities of daily living, medical records, lay evidence, and evidence of pain. *See Burnett*, 220 F.3d at 121-22; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Finding that the ALJ failed to properly evaluate the opinion evidence of record, the Court concludes that substantial evidence does not support the ALJ's RFC assessment.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the Commissioner of Social Security is **VACATED,** and this case is **REMANDED** for further proceedings consistent with this Memorandum.

### B. THE COURT DECLINES TO ADDRESS JOHNSTON'S REMAINING ARGUMENTS

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Johnston's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Johnston's additional contentions would be futile given that the ALJ's decision concerning Johnston's RFC assessment may yield a different result.

## V. **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation"). In this case, the appropriate measure is to remand for further development of the record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence, including assessing the credibility of the evidence and weighing the evidence. Moreover, to the extent that the ALJ reaches a contradictory finding as to Johnston's treating physicians, the ALJ must explain the reasoning behind such a finding, including reconciling conflicts and discussing how and why probative evidence supporting Johnston's claim was discounted and/or rejected.

VI.   **C**ONCLUSION

Based on the foregoing, the Commissioner's decision to deny Johnston disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

Dated: July 19, 2021                              *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **Chief United States Magistrate Judge**